IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
EDWARD M. LUCKASEVIC,        )
et al.,                      )
                             )
          Plaintiffs,        )    Civil Action No. 06-1629
                             )
v.                           )    Judge Cercone
                             )    Magistrate Judge Caiazza
WORLD KITCHEN, INC.,         )
et al.,                      )
                             )
          Defendants.        )
```

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that the Defendants' Motion to Dismiss (Doc. 21) be granted regarding Defendants Donald O. Good, Shawn Staranko and Timothy Gertz, but otherwise denied.

### II.   REPORT

#### A.   Background

The Plaintiffs (or "Retirees") are ten former employees of World Kitchen, Inc. (now LLC, hereinafter "World Kitchen"). *See generally* Am. Compl. (Doc. 18); Defs.' Br. (Doc. 22) at 1 n.1. They allege the Defendants breached fiduciary duties under ERISA by inducing their early retirement while failing to disclose, and making misrepresentations regarding, the true nature of the Retirees' future health benefit costs. *See generally* Am. Compl. The allegations in support of the Plaintiffs' claims are as follows.

The Retirees' employment relationship with World Kitchen was governed by a Collective Bargaining Agreement ("the CBA" or "the Agreement") entered on their behalf by United Steelworkers of America ("the Union"). *Id.* at ¶ 16. The CBA provided that early retirees would pay the same health benefit premiums as active employees. *See id.* at ¶ 19.

In 2001-2002, and as a result of financial difficulties, World Kitchen entered into negotiations with the Union seeking certain concessions under the CBA. *Id.* at ¶¶ 20-21. Ultimately, the parties agreed upon a concession whereby the cost of health benefits for early retirees could be increased after September 1, 2003. *Id.* at ¶ 24; *see* concession agreement (attached as Ex. 2 to Doc. 18). The concession was "kept secret" by the Union and World Kitchen; no publication or broadcast of the changes was made to the employees. Am. Compl. at ¶¶ 25-27.

Around the same time, World Kitchen held company-sponsored meetings encouraging employees to consider early retirement. *See generally id.* at ¶¶ 30-31, 37, 42, 46. Both during and outside of these meetings, World Kitchen's agents "deliberately and intentionally failed to disclose the change in the [CBA]" and "affirmatively represented that there had been no change in the benefits due [early] retirees." *Id.* at ¶ 37. Specifically, the Retirees were advised that "the cost of health insurance would be the same" for them "as it would be for active

employees." *See, e.g., id.* at ¶¶ 51, 58, 73, 84, 91, 95.

In reliance on these assurances, the Plaintiffs agreed to take early retirement. *See id.* at ¶ 32. It was only in December 2003 that they learned of the CBA concession, when they were charged, on average, nearly five times as much for medical coverage as active employees. *Id.* at ¶ 35.

After the Plaintiffs' retirement, World Kitchen and the Union negotiated a new CBA, which included the provision that early retirees would pay the same for health coverage as active employees. *See id.* at ¶ 39. The Plaintiffs, and the Plaintiffs alone, were made to carry the heavier burden of health insurance costs. *Id.*

On these facts, the Plaintiffs bring ERISA breach of fiduciary duty claims against World Kitchen and a related corporate entity (collectively, "World Kitchen" or "the Corporate Defendants"), as well as Individual Defendants Timothy Gertz, Donald O. Good, and Shawn Staranko. *Id.* at ¶¶ 3-7.

Mr. Gertz was World Kitchen's Vice-President of Operations, and he allegedly "orchestrated the events" leading to this lawsuit, including the change in the CBA and the Defendants' failure to notify the Plaintiffs. *Id.* at ¶¶ 4-5; *see also id.* at ¶¶ 10, 14, 30 (Mr. Gertz "directed[,] orchestrated and scripted" management's misrepresentations and omissions regarding changes to CBA, and he "retained overall authority and

-3-

responsibility for implementing the secret [plan]").

Mr. Good and Ms. Staranko were the company's Personnel Manager and Human Resources Representative, respectively. *Id.* at ¶ 7. They were held out by World Kitchen as "the individuals who possessed knowledge, understanding, and resources to provide information to the plan participants concerning the level of benefits." *Id.* at ¶ 12. It was these employees who carried out the "secret plan," telling the Plaintiffs their benefits would not change or, alternatively, failing to disclose that they very well could. *See, e.g., id.* at ¶ 95 (at company-sponsored meeting, Defendants Staranko and Good "explicitly stated that if employees elected early retirement, they would be entitled to the same health insurance coverage as provided [to] active employees and would pay the same amount"). There are no allegations stating, or reasonably inferring, that these Defendants made the alleged misrepresentations of their own accord; to the contrary, their conduct "was directed by [Mr.] Gertz" and "undertaken in their role as agents and employees of World Kitchen." *Id.* at ¶ 37.

B.   **The Defendants' Motion to Dismiss**

Counsel first argues that the Plaintiffs have failed to make sufficient averments to establish ERISA fiduciary status. *See* Defs.' Br. at 7-9. While this is true of lower-level employees Good and Staranko, it is not so for the Corporate

-4-

Defendants and Mr. Gertz.

The leading Supreme Court case in this area is <u>Varity Corp.</u> <u>v. Howe</u>, 516 U.S. 489 (1996).  There, the employee-retirees claimed that the employer-plan administrator, "through trickery, led them to withdraw from the plan and to forfeit their benefits."  *Id.* at 492.  Specifically, the employer decided to avoid paying promised medical benefits by "inducing" employees to voluntarily release their benefits under a solvent plan into another plan it knew would soon fail.  *See id.* at 493. In furtherance of the scheme, the employer among other things called "a special meeting and talked to [the employees] about [the other plan sponsor's] future business outlook, its likely financial viability, and the security of their employee benefits."  *Id.* at 493-94. "The thrust of [the employer's] remarks . . . was that the employees' benefits would remain secure," while in reality they were far from it.  *Id.* at 494.

The Supreme Court held, under the same statutory provisions invoked by the Plaintiffs here, that the employer's conduct fell within the ambit of fiduciary activity.  *See id.* at 498. The Court reasoned:

> To decide whether [the employer's] actions
> [fit] within the statutory definition of
> 'fiduciary' acts, we must interpret the
> statutory terms [that] limit the scope of
> fiduciary activity to discretionary acts of
> plan 'management' and 'administration.'
> . . .

> Conveying information about the likely future
> of plan benefits, thereby permitting
> beneficiaries to make an informed choice
> about continued participation, would seem to
> be an exercise of a power appropriate to
> carrying out an important plan purpose[,
> *i.e.*, administration].  After all, ERISA
> itself specifically requires administrators
> to give beneficiaries certain information
> about the plan. . . .  To offer beneficiaries
> detailed plan information in order to help
> them decide whether to remain with the plan
> is essentially the same kind of plan-related
> activity. . . .
>
> Moreover, [the information relied upon by the
> plaintiffs] came from those within the firm
> who had authority to communicate as
> fiduciaries with plan beneficiaries. . . .
> [R]easonable employees, in the circumstances
> found by the District Court, could have
> thought that [the defendant] was
> communicating with them both in its capacity
> as employer and in its [fiduciary] capacity
> as plan administrator.

*Id.* at 502 (citations and some internal quotations omitted).

Both before and after <u>Varity</u>, the Third Circuit Court has consistently recognized that "an employer act[s] as a 'fiduciary' when it significantly and deliberately misl[eads] plan beneficiaries." <u>Lettrich v. J.C. Penney Co., Inc.</u>, 2004 WL 103414, *6 n.14 (3d Cir. Jan. 22, 2004) (citing <u>Varity</u>). The duty is implicated not only when the employer makes misrepresentations, but also if it remains silent regarding "material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." <u>Horvath v. Keystone Health Plan East, Inc.</u>,

-6-

333 F.3d 450, 461 (3d Cir. 2003) (citation omitted); *see also,*
*e.g.*, In re Unisys Corp. Retiree Med. Benefits ERISA Litig.,
57 F.3d 1255, 1264 (3d Cir. 1995) (known in Third Circuit as
"Unisys I") (allowing breach of fiduciary duty claim where
employer "affirmatively and systematically represented to its
employees that once they retired, their medical benefits would
continue for life -- even though . . . the plans clearly
permitted the company to terminate benefits"; "when a plan
administrator affirmatively misrepresents the terms of a plan or
fails to provide information when it knows that its failure to do
so might cause harm, the plan administrator has breached its
fiduciary duty") (citations omitted).

The Plaintiffs' allegations suffice under the aforementioned
standards.  The Retirees allege that World Kitchen, through its
agents, made misrepresentations and omissions regarding the costs
of their future health benefits.  Their claims are materially
indistinguishable from the ones permitted in Varity and Unisys I,
and they have pled sufficient allegations of fiduciary status.

The Defendants claim Varity is inapposite because the
employer there was named the plan administrator, whereas World
Kitchen is not identified as such here.  *Compare* Defs.' Reply Br.
(Doc. 24) at 4 *with* Am. Compl.  This argument fails on two
levels:  first, it is far from certain that World Kitchen was not
the plan administrator; and second, the employer need not be the

administrator to be deemed a fiduciary.

The Amended Complaint does not make clear the identity of the "plan administrator," as defined under ERISA.  *See id.*[1] The CBA attached to the Amended Complaint, which the court must assume is the ERISA plan document, likewise fails to specify a "plan administrator," although it does contain language indicating World Kitchen filled that role.  *See* CBA (attached to Am. Compl.) at 36 ("[t]he present procedures and practices of the Company in providing insurance benefits shall be continued") (emphasis added).

In any event, the failure of the plan document to identify an administrator does not mean one did not exist.  Under ERISA, if an "administrator" is not designated in the plan, the responsibility is assigned to the "plan sponsor."  *See* 29 U.S.C. §§ 1002(16)(A)(i)-(ii).  For "an employee benefit plan established or maintained by a single employer," like World Kitchen's, the plan sponsor is "the employer."  *Id.* at § 1002(16)(B)(i); *see also, e.g.,* Kinek v. Paramount Commc'ns, Inc., 22 F.3d 503, 505-506 (2d Cir. 1994) (under plan negotiated

---

[1]  The only reference to the term "plan administrator" comes in paragraph 36 of the Amended Complaint, which states:  "There was no point or time before the Plaintiffs elected early retirement when World Kitchen, the plan administrator, or any of the individual Defendants publicized, advertised, or otherwise broadcast the change in the plan."  *Id.*  This passage can be interpreted to indicate World Kitchen was the administrator, but it also can be read to contemplate another, unspecified entity.  *See id.*

between union and single employer, employer was plan sponsor under § 1002(16)(B)(i)).  Thus, the Defendant's disclaimer of the "plan administrator" role does not appear consistent with the record.  *Cf.* Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (under Rule 12(b)(6), court may consider documents attached to or submitted with complaint) (citation omitted).[2]

Even assuming another, unidentified entity filled the role, there is nothing in the law requiring an ERISA fiduciary to be an "administrator."  The precedent is to the contrary.  *See, e.g.*, Reilly v. Keystone Health Plan East, Inc., 1998 WL 754740, *2 (E.D. Pa. Oct. 29, 1998) (ERISA "does not mandate that causes of action for a breach of fiduciary duty can only be brought against an administrator") (citing 29 U.S.C. § 1132(a)(3) and Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 233 (3d Cir. 1994) for proposition that ERISA fiduciary is term "broadly define[d]").

For these reasons, World Kitchen has failed to show the insufficiency of the Plaintiffs' fiduciary status allegations. Likewise without merit are the Defendants' arguments regarding the materiality of the alleged misrepresentations/omissions and

---

[2]  Notably, it is not clear from Varity whether the employer there was specifically identified as the administrator in the plan documents. The opinion appears to indicate the contrary.  *Id.* at 498 (noting "Varity was both an employer and the benefit plan's administrator," and citing ERISA § 1002(16) for proposition that "[the] employer is, in some circumstances, the default plan administrator") (emphasis added).

the Plaintiffs' detrimental reliance.

As to materiality, the Defendants argue the pleadings are devoid of allegations that they "had knowledge of [the] Plaintiffs' supposed confusion regarding the duration of the benefits provided in the CBA." Defs.' Br. at 10. To the extent World Kitchen challenges the materiality of its alleged misrepresentations/omissions generally, counsel's focus on what the Defendants purportedly knew is misplaced. For the purposes of ERISA fiduciaries, the subject matter in question is "material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision." Horvath, 333 F.3d at 461-62 (citations and internal quotations omitted). The Plaintiffs' allegations are easily sufficient, as are their claims of detrimental reliance. See discussion supra (Defendants' assurances that cost of medical benefits would not increase was important factor in Plaintiffs' decision to accept early retirement, and they relied on Defendants' assurances to their detriment).[3]

---

[3]  Regarding materiality, the Defendants' reliance on Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365 (3d Cir. 2003) is misplaced. There, the Third Circuit Court stated in dicta that the "reasonable beneficiary" standard "suggest[ed] that a fiduciary, as an objective matter, knew or should have known that a beneficiary would be confused." Id. at 386 n.31. Even assuming this standard applies, the Retirees' pleadings are sufficient because they allege the Defendants "intent[ionally]" misled them to induce their early retirement. See, e.g., Am. Compl. at ¶ 30.

Defense counsel also posits that the alleged misrepresentations were immaterial, and the Plaintiffs' reliance thereon unreasonable, because even the unmodified CBA only assured that early retirees' medical payments would be the same as active employees "during the term of [the] Agreement." *See* Defs.' Br. at 11.  This argument fails for at least two reasons.

First, the law is clear that an ERISA fiduciary is prohibited from making material misrepresentations or omissions, irrespective of what the plan documents actually say.  *See, e.g.*, Unisys I, 57 F.3d at 1264 (finding breach of fiduciary duty where employer made "affirmative[] and systematic[] represent[ations] to its employees" that medical benefits would continue for life, even though "the plans clearly permitted the company to terminate benefits") (emphasis added).  The CBA's duration provision notwithstanding, the Plaintiffs expressly allege that World Kitchen's agents told them their costs of health care would not increase after retirement.  *See* discussion *supra*.  Even assuming the Defendants meant that such protection extended only to the term of the current CBA, they had an affirmative duty to communicate this fact to the Plaintiffs.  *See id.* (silence regarding material information is equally actionable under breach

of fiduciary duty theory).[4]

Second, the mere fact that the pre-concession CBA purportedly limited its early retiree coverage to the duration of the Agreement does not establish that the misrepresentations/omissions were accurate when made.  Simply put, the pre-concession CBA in no way contemplated that early retirees' benefit costs could be increased after September 1, 2003.  *See* CBA.  The concession agreement expressly contemplated such an event; that was the agreement's very purpose and function. *See* concession agreement.  Under the circumstances, the change in the plan would appear quite reasonably pertinent to the Plaintiffs' decisions to retire, and they have alleged sufficient facts to establish materiality and detrimental reliance.[5]

---

[4]  In their Reply Brief, the Defendants claim that the Plaintiffs "admit they had, and read, the CBA in connection with their respective decision[s] to retire[,] which included the expiration date." *Id.* at 10.  The undersigned's review of the pleadings has identified no such admission.  Rather, the Amended Complaint states that the Plaintiffs "relied upon . . . previously published and disseminated information [that] was contained in the [CBA]." *Id.* at ¶ 29. Affording all reasonable inferences to the non-moving party, the court understands this averment to mean only that the Plaintiffs relied on "published and disseminated" information regarding early retirees' medical benefit costs.  Indeed, references to the pre-concession CBA are made interchangeably with the allegations that World Kitchen represented early retirees would enjoy the same medical benefit rights as active employees. *See, e.g., id.* at ¶ 51 (claiming Defendants "represented that the cost of health insurance would be the same for [the Plaintiff], as an early retiree, as it would be for active employees and that the description of the benefits contained in the [CBA] was accurate").

[5]  The fact that World Kitchen and the Union found it necessary to secretly amend the CBA undermines Defense counsel's theory that the Plaintiffs' interests expired with the Agreement in 2003.  For if the expiration of the CBA extinguished the Plaintiffs' rights regarding medical benefit charges, there would have been little reason to modify the Agreement.

For all of these reasons, the Plaintiffs have alleged sufficient facts to state breach of fiduciary duty claims against the Corporate Defendants.  Defendants Good and Staranko present a different question.

In Taylor v. Peoples Natural Gas Company, the Third Circuit Court addressed the standards under which an individual employee may be held liable as an ERISA fiduciary:

> [I]ndividuals, whose activities are limited within a framework of policies, interpretations, rules, practices, and procedures made by other persons[ who are] fiduciaries with respect to the plan, cannot be individually liable as fiduciaries under ERISA, since they fail to exercise the discretionary authority or discretionary control over the plan required for the direct imposition of fiduciary liability.

*Id.*, 49 F.3d 982, 987 (3d Cir. 1995) (citation and internal quotations omitted, emphasis added).  The Taylor Court thus held that a plan sponsor's "Supervisor of Employee Benefits" was not an ERISA fiduciary, although the third-party administrator could be liable for breach of fiduciary duty based on his alleged omissions.  *Id.* at 987-89.

Like the employee in Taylor, Defendants Good and Staranko were not responsible for making the decisions and policies they assisted in implementing.  *See* discussion *supra* (Defendants' conduct "was directed by [Mr.] Gertz" and "undertaken in their role as agents and employees of World Kitchen").

-13-

These relatively low-level employees were not ERISA fiduciaries, and the Plaintiffs' claims against them in their individual capacities should be dismissed.

This is not to say, however, that World Kitchen cannot be held liable for the conduct of Mr. Good and Ms. Staranko. Nor does it resolve the question of whether Mr. Gertz, who allegedly orchestrated the "secret plan," is an ERISA fiduciary. The answers to these inquiries can be found in <u>Confer v. Custom Eng'g Co.</u>, 952 F.2d 34 (3d Cir. 1991).

The <u>Confer</u> Court addressed the issue of whether officers of a company can be individually liable as ERISA fiduciaries:

> [O]fficers of a corporation that sponsors an employee benefit plan are not fiduciaries solely by reason of holding office. . . . Because a corporation always exercises discretionary authority, control, or responsibility through its employees, [S]ection 3(21)(A) must be read to impute to the corporation some decisions by its employees.  Otherwise, the fictional 'person' of a corporation could never be a fiduciary because a corporation could never meet the statute's requirement of 'having discretion.' We cannot read [S]ection 3(21)(A) in a way that abrogates a use of corporate structure clearly permitted by ERISA.
>
> We thus hold that when an ERISA plan names a corporation as a fiduciary, the officers who exercise discretion on behalf of that corporation are not fiduciaries within the meaning of section 3(21)(A)(iii), unless it can be shown that these officers have individual discretionary roles as to plan administration.  For example, . . . if . . . the corporation delegates some of its fiduciary responsibilities to an officer, then the designated individual would be a fiduciary under section 3(21)(A)(iii).

*Id.* at 37 (citations omitted).

Confer is instructive in two ways.  First it establishes that Mr. Gertz may be liable as an ERISA fiduciary because World Kitchen "delegate[d] . . . fiduciary responsibilities to [him]." *Compare id. with* discussion *supra* (summarizing allegations that Mr. Gertz "directed[,] orchestrated and scripted" World Kitchen's plan and "retained overall authority and responsibility for implementing [it]").  Second, it confirms that the Corporate Defendants may be held liable for the conduct of non-fiduciary employees Good and Staranko based on their implementation of the "secret plan" under the cloak of actual authority.  *See* Confer, 952 F.2d at 37 & n.4 ("[b]ecause a corporation always exercises discretionary authority, control, or responsibility through its employees," ERISA "must be read to impute to the corporation some decisions by its employees"; "we stress that the definition of fiduciary allows use of the corporate form and does not limit fiduciary status to individuals") (citations omitted); *see also* discussion *supra* (Defendants Good and Staranko were "held out by World Kitchen as the individuals who possessed knowledge, understanding, and resources to provide information to the plan participants concerning the level of benefits").

Consistent with the foregoing, the Plaintiffs' allegations do not support a fiduciary claim against Defendants Good and Staranko, although they are sufficient with respect to Mr. Gertz.

-15-

As seen below, however, the Plaintiffs cannot demonstrate their ability to state equitable claims against Defendant Gertz, so the issue is largely moot.  *See* discussion immediately *infra*.[6]

The Defendants also challenge the Plaintiffs' ability to assert equitable claims for relief under 29 U.S.C. § 1132(a).  *See* Defs.' Br. at 12-13.  Again, this issue implicates the Supreme Court's decision in Varity.

After conducting a lengthy and carefully reasoned analysis of the ERISA statute, the Varity Court came to conclude that Section 1132(a)(3) authorizes individualized equitable relief for the type of fiduciary claim alleged here.  *Id.*, 516 U.S. at 515.  Regarding the case before it, the Court stated:

> [Section 1132(a)(3)] authorizes 'appropriate' equitable relief.  We should expect that courts, in fashioning 'appropriate' equitable relief, will keep in mind the special nature and purpose of employee benefit plans, and will respect the policy choices reflected in the inclusion of certain remedies and the exclusion of others. . . .  Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.' . . .

---

[6]  The loss of Messrs. Good, Gertz and Ms. Staranko as Defendants should have little, if any, practical significance regarding the Plaintiffs' claims.  As seen above, the law makes clear that the Corporate Defendants may be liable for breach of fiduciary duty based on the conduct of their employees.  Even if they are dismissed as parties, the Individual Defendants should remain material witnesses in this case.

> But that is not the case here.  The
> plaintiffs in this case could not proceed
> under the first subsection[, *i.e.*,
> 1132(a)(1)(B),] because they were no longer
> members of the . . . plan and, therefore, had
> no benefits due [them] under the terms of
> [the] plan. . . .
>
> They could not proceed under the second
> subsection[, *i.e.*, 1132(a)(2),] because that
> provision . . . does not provide a remedy for
> individual beneficiaries. . . .
>
> They must rely on the third subsection[,
> *i.e.*, Section 1132(a)(3),] or they have no
> remedy at all.  We are not aware of any
> ERISA-related purpose that denial of a remedy
> would serve.  Rather, we believe that
> granting a remedy is consistent with the
> literal language of the statute, the Act's
> purposes, and pre-existing trust law.

*Id.* (citations and some internal quotations omitted).

These observations apply with equal force in the instant case.  The Plaintiffs cannot proceed under the first subsection discussed in <u>Varity</u>, Section 1132(a)(1)(B), because the Defendants did not violate the post-concession CBA.  The Retirees do not contest that the concession agreement precludes the coverage they seek; rather, they allege World Kitchen intentionally misled them to believe that their rights remained unaffected.  Thus, relief is not available under Section 1132(a)(1)(B).  *See* <u>Eichorn v. AT&T Corp.</u>, 484 F.3d 644, 652-53 (3d Cir. 2007) ("[this] subsection . . . provides a cause of action only where a plaintiff alleges a violation of the terms of a benefits plan or an ambiguity in the plan requiring judicial

interpretation").

The second subsection, 1132(a)(2), is unavailable given the Supreme Court's recognition that it "does not provide a remedy for individual beneficiaries." Varity, 516 U.S. at 515 (citation omitted).

As the plaintiffs in Varity, then, the Retirees here "must rely on" Section 1132(a)(3) "or they have no remedy at all." Id. Under the circumstances, the Supreme Court directs that allowing equitable relief through said provision "is consistent with the literal language of the statute, the Act's purposes, and pre-existing trust law." Id.; accord Ream v. Frey, 107 F.3d 147, 152-53 (3d Cir. 1997) (where beneficiary "suffered a direct, clearly defined personal loss" as result of fiduciary's misconduct, district court was correct under Varity in allowing beneficiary "to bring an action seeking individual relief") (other citations omitted).

Unisys I sets the parameters for the type of equitable relief available:

> [T]he retirees are not entitled to money damages for a breach of fiduciary duty. Instead, [they] seek an injunction ordering specific performance of the assurances . . . made [by the employer], restitutionary reimbursement for back benefits, and restoration of the status quo ante for [certain] retirees by rescinding their retirement agreements. These are remedies which are restitutionary in nature and thus equitable. . . . It will be for the district court to determine which of these remedies are appropriate under the circumstances of these individual claims.

*Id.*, 57 F.3d at 1269 (citations omitted, emphasis added).

Here, the Plaintiffs seek "injunctions restoring them to the position they would have been [in] but for the deceit of [the] Defendants," "orders directing that they be reimbursed for all extra health insurance coverage they paid," that "the company be directed to provide them health insurance coverage at level offered to active employees," or alternatively that "the company reinstate the Plaintiffs to their positions with all appropriate seniority[ and] back pay."  Am. Compl. at ¶ 107; *see also id.* (requesting "all other remedies which are just and appropriate to make them whole").  These requests are largely consistent with the ones in <u>Unisys I</u>, and the Defendants have failed to show them unavailable at this early stage of the litigation.[7]

---

[7]  The Defendants' reliance on <u>Eichorn</u> is unavailing.  *Cf.* Defs.' Reply Br. at 14-15.  In that case, the plaintiffs sought to enforce their pension plan's "bridging rights," under which a participant who left his employment and returned within six months could "'bridge' the two terms of employment, receive pension credit for all prior service, and continue to accrue pension benefits as if he had never left."  *Id.* at 647-48.  Although the Court found sufficient evidence that the defendants impermissibly interfered with the plaintiffs' pension rights, it concluded that the relief requested was not "appropriate" under Section 1132(a)(3).  *Id.* at 654.  In reaching this conclusion, the Court distinguished <u>Varity</u> as follows:

> [T]he plaintiffs in <u>Varity</u> were deceived into transferring from one subsidiary to another within the same company, and thus <u>the relief in that case was measurable according to the defendants' gain, rather than the plaintiffs' loss</u>. . . . In <u>Varity</u>, the plaintiffs sought pension benefits for work they had actually done for their employer, and the court's decree was a matter of restoring the plaintiffs' benefits . . . to the preexisting arrangement, thus undoing the effects of the defendants' deception.  Here, however, the plaintiffs are seeking pension benefits for work they never did . . . ., but which they argue they might have done

While the Plaintiffs may request equitable remedies of the Corporate Defendants, there is no basis for concluding such relief is available against Defendant Gertz individually. The court's independent review of the law has failed to identify a single court decision permitting such equitable relief against an individual defendant. Moreover, Defense counsel represents, and the Plaintiffs have failed to refute, that Mr. Gertz lacks the capacity to provide the relief requested. *See* Defs.' Br. at 14. Under the circumstances, the District Court should dismiss the claims against this Defendant for want of a remedy.

Finally, the Defendants argue that the Plaintiffs have failed to satisfy the heightened pleading standards in Federal Rule 9(b). *See* Defs.' Br. at 9-10. The question of whether

---

had [the defendant] not adopted a [no-]hir[e] policy . . . . The remedy they seek is thus akin to 'back pay,' which is not an equitable remedy within the meaning of the statute.

*Id.* at 656 (citations omitted).

Like in Varity, the relief in this case can be measured by "the defendants' gain"; indeed, the Plaintiffs allegations necessarily infer that the "secret plan" was instituted to save World Kitchen the expenses related to their future medical benefits. In this regard, the instant case is indistinguishable from Varity. Unlike the plaintiffs in Eichorn, moreover, the Retirees here are not seeking "benefits for work they never did"; they are asking for the "restor[ation]" of medical benefits earned through over thirty years of employment. *See* Am. Compl. at ¶ 15 ("[t]he Plaintiffs were employed . . . with World Kitchen and its predecessor . . . for periods of between 30 and 35 years"). Finally, the Eichorn Court was careful to clarify that "an ERISA plaintiff's demand for money [does not] necessarily require[] the conclusion that the relief sought is not 'equitable' within the meaning of the statute," *id.* at 655 n.6; nor did the court purport to overrule Unisys I's discussion of the equitable relief available under circumstances materially similar to those presented here.

Rule 9(b) applies is an unsettled one.  *See* <u>In re Coca-Cola</u>
<u>Enterps. Inc., ERISA Litig.</u>, 2007 WL 1810211, *5 (N.D. Ga.
Jun. 20, 2007) (noting split of authority, and collecting cases
for competing propositions that Rule 9(b) "must be met where the
underlying allegations are grounded in fraud" and that
"a fiduciary claim brought under ERISA need only provide notice
pleading, regardless of whether the claims are based on an
underlying fraud").

The District Court need not resolve the split of authority,
because the Plaintiffs' allegations are sufficient under
Rule 9(b).  For each individual Plaintiff, the Amended Complaint
identifies the specific misrepresentation(s) or omission(s) made,
who made them, the context within which they arose, and when they
were made (*i.e.*, before the Plaintiffs accepted early
retirement).[8]  For these individuals to provide greater detail,
they would have been required to meticulously track the precise
language, dates and times of the statements and omissions,
perhaps by carrying an electronic recording device or maintaining

---

[8]  *See, e.g.*, Am. Compl. at ¶¶ 42-46 (Plaintiff Luckasevic attended
employer-sponsored meeting in June 2002 to encourage early retirement,
and Defendants Good and Staranko "explicitly represented to all the
employees in attendance that the[ir] level of benefits" would remain
unchanged) *and id.* at ¶¶ 57-58 (prior to electing retirement,
Plaintiff Bonucci spoke with Defendant Staranko "to gather information
about [his] retirement benefits, including the cost of health
insurance coverage," and she claimed he would pay "the same as . . .
active employees").  Similar allegations are made regarding the
remaining eight Plaintiffs.  *See id.* at ¶¶ 49-54, 61-64, 65-70, 71-76,
77-81, 82-86, 87-92, 93-96.

a notebook like the autistic character in the movie "Rainman."[9]
Thankfully, the law is not so exacting, and the Defendants'
objections regarding specificity are of no avail.  *See, e.g.*,
In re Ikon Office Solutions, Inc. Sec. Litig., 86 F. Supp.2d 481,
488-89 (E.D. Pa. 2000) (allegations of fraud were pleaded with
sufficient particularity "to give the defendants notice of the
misconduct with which they [were] charged"; "[o]bviously,
allegations of time, place, and date" are sufficient, but
plaintiffs "are free to use alternative means of injecting
precision and some measure of substantiation into their
allegations" because Third Circuit "has repeatedly cautioned that
courts should apply this rule flexibly, particularly when the
information at issue may be in the defendants['] control").

**C.   Conclusion**

For all of the reasons stated above, the Defendants' Motion
to Dismiss should be granted regarding the Individual Defendants
but denied with respect to the Corporate Defendants.

In accordance with the Magistrate's Act, 28 U.S.C. § 636
(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for
Magistrates, objections to this Report and Recommendation are due
by August 16, 2007.

---

[9]   *See generally* the web page at http://en.wikipedia.org/wiki/Rain_Man,
discussing Raymond's use of a spiral notebook to document incidents in
his life, often exaggerating what happened, such as when his brother
Charlie "[s]queezed and pulled and hurt" his neck.

Responses to objections are due by August 27, 2007.


July 31, 2007

Francis X. Caiazza
U.S. Magistrate Judge

cc (via email):

Adrianne C. Mazura, Esq.
Kelli A. Toronyi, Esq.
Michael J. O'Neill, Esq.
Edward A. Olds, Esq.